

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2007

# Toumi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1888

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Toumi v. Atty Gen USA" (2007). *2007 Decisions.* Paper 607.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/607

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-1888

———————

MUSTAPHA TOUMI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
SECRETARY OF DEPARTMENT OF HOMELAND SECURITY,
                                        Respondents

———————

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A79-733-433
Immigration Judge: Miriam K. Mills

———————

Submitted Under Third Circuit LAR 34.1(a)
May 21, 2007

———————

Before: BARRY, CHAGARES, and TASHIMA,* Circuit Judges

(Opinion Filed:  August 7, 2007)

———————

OPINION

———————

BARRY, Circuit Judge

————————————

   * The Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

Mustapha Toumi, a native and citizen of Algeria, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of Toumi's application for political asylum, withholding of removal, and relief under Article III of the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition.

## I.

Toumi entered the United States on August 19, 1997, as a nonimmigrant visitor for business. On May 5, 1998, he was granted F-1 status as a nonimmigrant student.

When it came to the attention of the Department of Homeland Security that Toumi had never enrolled in school, he was served with a Notice to Appear, which alleged that he was removable for failing to comply with the conditions of his F-1 status, in violation of section 1227(a)(1)(C)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). Toumi conceded the charge but applied for asylum, withholding of removal, and protection under the CAT.

On October 25, 2004, the IJ held a hearing on his application. Toumi testified that in 1993 military police arrested his father for allegedly collaborating with terrorist groups. His father was convicted and imprisoned for ten months. Unnamed colleagues at the Office of Housing and Real Estate Development in Medea, which Toumi headed, threatened to expose the fact that Toumi's father had been convicted of collaborating with terrorists to pressure Toumi into approving licenses and permits that would not otherwise have been approved, but he never gave in to their demands. Other than the "negative

climate" the demands created, Toumi suffered no harm by virtue of the father/son relationship. Toumi also maintained that he had received threatening phone calls from persons he believed were Islamic fundamentalists because of his pro-Western, progressive political views.

Following the hearing, the IJ issued an oral decision denying Toumi's claims. The IJ found Toumi to be ineligible for asylum because he had failed to file his asylum application within one year of his arrival in the United States and had not demonstrated changed circumstances materially affecting his eligibility for asylum or extraordinary circumstances relating to the delay in filing his application. Additionally, the IJ found that Toumi lacked credibility: the harm he allegedly suffered was implausible, his testimony lacked specificity, and inconsistencies between his testimony and that of his sole witness were unexplained. The IJ denied Toumi withholding of removal and protection under the CAT, specifically rejecting for a variety of reasons the anonymous threatening phone calls on which the withholding claim was based, and concluded that his claims were not only unreliable, but frivolous.

On February 16, 2006, the BIA adopted and affirmed the IJ's denial of Toumi's asylum claim on the basis of his failure to file his application for asylum within one year of his arrival. The BIA also adopted and affirmed the IJ's denial of Toumi's withholding and CAT claims because Toumi failed to show that he would be persecuted on account of a protected ground. Finally, the BIA rejected Toumi's claims that he was denied due process by the IJ and that the IJ's decision was based on errors in the translation at the

3

hearing.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). When, as here, the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA. He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We treat factual findings as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III.

While not contesting the IJ's application of the one-year bar, Toumi claims, first, that he is eligible for asylum on the basis of his membership in a particular social group and political opinion. Even assuming that Toumi meant to say withholding instead of asylum, he has not met the statutory requirements for relief.

To qualify for withholding of removal, Toumi must establish that his "life or freedom would be threatened in [Algeria] because of [his] race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). We have interpreted this standard as requiring an applicant to demonstrate that, because of one of the enumerated grounds, "it is more likely than not that he will face persecution if he is deported." Li Wu Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001). The determination of whether a person "has suffered from persecution or whether that individual has a well-founded fear of persecution is factual and thus is entitled to

4

deference."  Neng Long Wang v. Gonzales, 405 F.3d 134, 138 (3d Cir. 2005).

Specifically, Toumi argues that his colleagues at the Office of Housing and Real Estate Development pressured him because of his membership in a social group consisting of people in his family who were "public official[s] and . . . closely identified with [Toumi's] father,"  Petr.'s Br. 18, and that pro-Islamist individuals threatened him because they did not like his progressive ideas.

The IJ's determination that Toumi's had not shown any evidence of persecution is supported by substantial evidence.  See Zhen Hua Li v. Attorney Gen., 400 F.3d 157, 167 (3d Cir. 2005) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom").  Toumi testified that he never succumbed to the pressure to approve licenses but suffered only a "negative climate" at work.  He left his job at the Office of Housing and Real Estate Development to pursue a Masters Degree in France, but returned safely to Algeria on several occasions.  Moreover, the social group he identifies, members of his family who live at home and occupy public positions in government, does not amount to what has been defined as a social group.  A particular social group refers to a group of people who share a common, immutable characteristic, a characteristic that they cannot change or should not be required to change because it is fundamental to their identities or consciences.  See In re Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985); Lukwago v. Ashcroft, 329 F.3d 157, 171 (3d Cir. 2003) (accepting BIA's construction of "particular social group").  Neither place of residence nor profession qualifies under this definition.

5

While it is plausible that Islamic fundamentalists believed Toumi to hold pro-Western views because of his professional position and French degree, and even if the telephone calls he received were intended as threats, Toumi does not claim to have ever been harmed. It was also reasonable for the IJ to conclude, based on Toumi's testimony, that the unnamed persons who telephoned his family's house and asked if he had returned to Algeria could have been seeking to contact him for any number of innocent reasons.

**IV.**

In his second point, Toumi argues that the IJ incorrectly assessed and discounted his sister's testimony, and, had the IJ not done so, the IJ would not have required corroboration or found that his sister contradicted him. Our review of his sister's testimony, however, indicates that it does contradict several of Toumi's statements. Although Toumi testified that his father's imprisonment tarnished his family's reputation and that his colleagues sought to accuse his family of terroristic associations, Toumi's sister stated that the rest of the family "was able to continue their normal life." Petr.'s Br. 19. Toumi contends that the IJ ignored the fact that the rest of the family did not live at home or work in government, but these distinctions do not negate the inconsistency. Toumi's sister also described the telephone calls the family received in which unnamed persons asked about Toumi's whereabouts, but she admitted that she had never personally answered the telephone. Toumi maintains that the fact that the callers did not leave their names is probative of their hostility towards him. It was, however, wholly appropriate for the IJ to expect statements from the members of Toumi's family who did answer the calls

and who have allegedly advised him not to return to Algeria.

Even if the IJ had accepted Toumi's sister's testimony in its entirety, the IJ still would have been justified in requiring Toumi to corroborate his claims that he was harmed by his father's arrest and that it would be dangerous for him to return to Algeria. While an applicant's testimony may sometimes be sufficient to sustain his burden of proof without corroboration, see 8 C.F.R. § 208.13(a); 208.16(b), an IJ may nonetheless require corroboration when the applicant may be "reasonably expected" to provide it, Dia v. Ashcroft, 353 F.3d 228, 253 (3d Cir. 2003). We have described this analysis as requiring of the IJ: "(1) an identification of facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating those facts; and, if he or she has not, (3) an analysis of whether an applicant has adequately explained why s/he was unable to do so." Mulanga v. Ashcroft, 349 F.3d 123, 134 (3d Cir. 2003).

We conclude that it was not unreasonable for the IJ to expect Toumi to corroborate his testimony as to the harm caused him by his father's arrest and the danger he would face were he to return to Algeria. See 8 U.S.C. § 1252(b)(4)(D). Although corroborating evidence may be unavailable in some cases because of the conditions under which a petitioner has fled his country, see Mulanga, 349 F.3d at 136-37, the record in this case does not suggest any such conditions here. We cannot conclude that the IJ erred in finding that, given the dearth of corroboration on key assertions, Toumi failed to show

7

that he was entitled to withholding of removal.[1]

## V.

Third, Toumi contends that given what happened to his father in 1993, he qualifies for asylum on humanitarian grounds. Because of the statutory time bar, which he does not dispute, and because he did not raise this claim before the BIA, we do not consider it.

## VI.

Finally, Toumi argues that he was deprived of competent translation at his removal hearing. In support of this argument, he cites a single instance where the translator advised the IJ that he was having difficulty understanding Toumi. The IJ asked Toumi to repeat his response, and no further difficulty was indicated. Toumi's counsel never objected to the quality of the translation at the hearing. As the BIA observed, "review of the transcript fails to reveal any significant misunderstanding or that the respondent complained that he did not understand the interpreter at that time." We agree.

## VII.

For the foregoing reasons, we will deny the petition for review.

---

[1] Toumi also suggests that the IJ erred in using the Country Reports, which indicate that the Algerian government has violated the human rights of accused terrorists, to discount his fear of the alleged threats from Islamic fundamentalists. According to him, the IJ should have viewed the Country Reports as confirming his independent fear of his co-workers, who allegedly pressured him because of his father's arrest as a terrorist collaborator. This argument, however, lacks merit. Toumi has made no credible showing that he was harmed by his failure to accommodate his co-workers' demands.